

THOMAS J. CATLIOTA
U.S. BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| In re: | * | Case No.   19-13235-SAL |
| Joseph Thomas Johnson, Jr. | * | Chapter   7 |
| Heather Rebecca Johnson | * | |
| Debtors | * | |
| * * * * * * * * | * | |
| State of Maryland Central Collection Unit | * | |
| Plaintiff | * | |
| vs. | * | Adversary No.   19-00183 |
| Joseph Thomas Johnson, Jr. | * | |
| Defendant | * | |
| * * * * * * * * * * * * * | | |

### MEMORANDUM OF DECISION

Plaintiff State of Maryland Central Collection Unit seeks to except from discharge under 11 U.S.C. §523(a)(2)(A) a debt owed to it by debtor and defendant Joseph Thomas Johnson, Jr. Plaintiff contends that defendant intentionally misrepresented his employment status in order to obtain unemployment benefits, as has been determined by the Secretary of the Department of Labor, Licensing and Regulation ("DLLR") in what is now a final ruling. Defendant seeks dismissal of the complaint on two grounds. He argues that statements concerning his employment status are statements "respecting [his] financial condition" as that phrase is used in

§523(a)(2)(B)(ii) and must be made in writing to provide a basis for a discharge exception. He contends the complaint must be dismissed because plaintiff has not alleged he made any written statements. Defendant also seeks dismissal on statute of limitations grounds. The court will deny defendant's motion to dismiss the complaint.

The court has subject matter jurisdiction under 28 U.S.C. §§1334(b), 157(a) and (b)(1) and Local Rule 402 of the United States District Court for the District of Maryland. This matter is a "core proceeding" under 28 U.S.C. §157(b)(2)(A) and (I) and the court has authority to enter a final order. The court notes, however, that in the complaint, plaintiff seeks only a determination that the debt owed by defendant to plaintiff is excepted from discharge. As discussed below, at the hearing on the motion to dismiss held on August 7, 2019, plaintiff stated it intends to amend the complaint to seek a money judgment of the amounts owed. The above statement of the court's authority to enter a final judgment applies to the complaint as currently framed.

## Facts

For purposes of this memorandum, the allegations in plaintiff's complaint are taken as true.

In 2004, defendant filed claims with DLLR for unemployment compensation benefits, at which time DLLR informed defendant of the requirements to remain eligible to receive unemployment benefits. ECF 1 at ¶9.

DLLR sent a pamphlet to defendant that further explained the procedures he must follow to remain eligible for the continued receipt of benefits. *Id.* As pertinent here, after filing an initial claim, defendant was required to file a continued claim each week of unemployment either

by Internet (Webcert) or telephone (Telecert).  *Id*. at Ex. 2, p. 5.  In either case, the claimant is given a personal identification number (PIN) to use each time he or she files a continued claim.

The pamphlet explains the system for filing a continued claim:

**How to File Your Continued Claim (Request for Payment)**

When you access either Telecert or Webcert, the system will tell you if there are one or two weeks available for you to file. You will be given the beginning and ending dates for the week(s) for which you are filing and will be asked the questions listed below for each individual week. If filing by Telecert, you will be prompted to answer the questions by pressing 1 on the telephone keypad for "Yes" and 2 for "No." If filing by Webcert, you will click on the correct answer.

1. **"Were you able and available to work full-time in your occupation without restrictions?"**
Note: If you answer "No" to this question you will then be asked "Were you unable to work due to medical reasons?"

2. **"Did you attend school or training during the week?" See page 14 for further instructions.**

3. **"Did you actively look for full-time work? For agency verification purposes, you must keep a written record of your contacts."**
Note: You are required to keep a weekly listing of your work search contacts. A section is provided in the back of this pamphlet. When asked, you will be required to produce this list of contacts. Failure to provide a list of weekly search contacts may result in a denial of unemployment insurance benefits.

4. **"Did you work, or earn any money, whether or not you were paid, during the week?"**
Note: If you answer "Yes", you will then be prompted to enter your earnings before deductions. You must report your gross earnings even if you were not paid yet. After entering the earnings, you must press the pound sign (#). Do not enter cents; round up the next whole dollar for $.01 through $.99. For example, if you earned $49.26, enter 50#. (If you are filing your Telecert from a rotary phone, you must say "Five" "Zero." Do not say "Fifty" or "Dollars"). Remember to record the name of the employer for whom you worked and your earnings for each week in the Claim Record section in the back of this pamphlet.

> You will be asked to review your answers each week. If filing by Telecert, the system will read back your answers after each week is entered giving you the opportunity to correct or change your answers prior to answering the questions for the second week. Listen carefully to your answers before accepting them. Once you have accepted the answers for the first week you **cannot** go back to that week and make any corrections. If filing by Webcert, you will be told to review your responses and make any corrections on either week before submitting.

*Id*. The pamphlet emphasizes the need for accuracy and the repercussions for providing false or incorrect information:

> It is very important that the responses to the questions on the continued claim are complete, correct and honest. The responses to these questions become a part of your permanent unemployment insurance record and will be retained. **Remember it is a criminal offense to withhold information or provide false information to obtain or increase benefits. If you commit this offense, you will be charged with unemployment insurance fraud.**

*Id.* at 5 (emphasis in original).

Between the time period of the weeks ending January 24, 2004; February 14, 2004 and including February 21, 2004; February 28, 2004; March 6, 2004; March 13, 2004; March 20, 2004; and March 27, 2004 through and including April 17, 2004; DLLR paid defendant unemployment compensation benefits in the total principal overpayment amount of $2,728.00, under the Maryland Unemployment Insurance Law administered by DLLR.  ECF 1 at ¶11.

Defendant knowingly advised DLLR during these time periods that he remained unemployed or underemployed and thus eligible for unemployment benefits.  *Id*.  DLLR reasonably relied on defendant's assurances that he was and remained unemployed or underemployed and DLLR paid him unemployment benefits during the period of fraud overpayment.  *Id*. at ¶12.

Despite defendant's declarations, the Secretary of DLLR subsequently determined that during the period, defendant earned wages and was ineligible for benefits, but continued to claim

and receive unemployment benefits. *Id*. at ¶13. The total principal fraud overpayment from the applicable period was $2,728. *Id*. Defendant was advised of his right to participate in a fact-finding investigation. Determinations of fraud were made by DLLR and defendant was given notice of the determination and of his appeal rights. Defendant did not appeal that decision and all appeal rights have now expired. *Id*. at ¶14.

On March 8, 2005, DLLR assigned defendant's obligations to plaintiff for collection.

Conclusions of Law

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks and alterations omitted)). The court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

To survive a motion to dismiss, a complaint must "contain sufficient factual matter . . . to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 667, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). The complaint must also state a "plausible claim for relief" and that determination by the court is a "context-specific task." *Walters*, 684 F.3d at 439 (citing *Iqbal*, 556 U.S. at 680–681 (plaintiffs bear the burden of establishing that a claim is not only conceivable, but also

plausible)). "Ultimately, factual allegations must . . . raise a right to relief above the speculative level, and the complaint must offer enough fact to raise a reasonable expectation that discovery will reveal evidence of the alleged activity." *US Airline Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312, 317 (4th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).

Plaintiff brings this action under 11 U.S.C. §523(a)(2). "The Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud, embodying a basic policy animating the Code of affording relief only to an honest but unfortunate debtor." *Cohen v. De La Cruz*, 523 U.S. 213, 217 (1998). This policy is codified in Section 523 which provides in pertinent part:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
> \*   \*   \*   \*   \*
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
> (B) use of a statement in writing--
> > (i) that is materially false;
> > (ii) respecting the debtor's or an insider's financial condition;
> > (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> > (iv) that the debtor caused to be made or published with intent to deceive;

§523(a)(2). While exceptions to discharge are narrowly interpreted to protect the purpose of providing debtors a fresh start, it is equally important to ensure that "perpetrators of fraud are not allowed to hide behind the skirts of the Bankruptcy Code." *Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 130 (4th Cir. 1999).

To state a misrepresentation claim under §523(a)(2)(A), a plaintiff must assert four elements: (1) a fraudulent misrepresentation; (2) that induces another to act or refrain from acting; (3) causing harm to the plaintiff; and (4) the plaintiff's justifiable reliance on the misrepresentation. *Biondo*, 180 F.3d at 134; *Miller v. Cigna Ins. Co.*, 311 B.R. 57, 61 (D. Md. 2004). In order to satisfy §523(a)(2)(B), a plaintiff must prove the debtor: (1) used a statement in writing respecting the debtor's or an insider's financial condition; (2) that was materially false; (3) that the creditor reasonably relied upon; and (4) that the debtor made with intent to deceive. *Guaranty Residential Lending, Inc. v. Koep*, 334 B.R. 364, 372-373 (Bankr. D. Md. 2005) (citing *Ins. Co. of N. Am. v. Cohn*, 54 F.3d 1108, 1114 (3d Cir. 1995)).

As is apparent from the statutory framework, if all other elements are met, a materially false "statement respecting the debtor's . . . financial condition" must be in writing to be excepted from discharge. §523(a)(2)(B). Misrepresentations that are not respecting the debtor's financial condition are excepted under §523(a)(2)(A).

The Supreme Court addressed the meaning of the phrase "statement respecting the debtor's financial condition" in *Lamar, Archer & Cofrin, LLP v. Appling,* --- U.S. ---, 138 S.Ct. 1752, 201 L.Ed.2d 102 (2018). The Court held that a statement about a single asset can be a statement respecting the debtor's financial condition within the meaning of §523(a)(2). *Lamar*, 138 S.Ct. at 1758. More pertinent here, the Court interpreted §523(a)(2)(B) broadly and held that a statement is "respecting" a debtor's financial condition "if it has a direct relation to or impact on the debtor's overall financial status." *Id.* at 1761.

Relying on *Lamar*, defendant contends the alleged misrepresentations in the complaint concern his employment status and have a direct relation to or impact on his overall financial

7

status. He argues, therefore, the alleged misrepresentations are statements respecting his financial condition and must be in writing to provide an exception from discharge.

The petitioner in *Lamar* argued that a broad reading of the phrase "statement respecting the debtor's financial condition" would give §523(a)(2)(B) "an implausibly broad reach, such that little would be covered" by §523(a)(2)(A). *Id.* at 1763. The Court disagreed. It gave as examples of viable claims under §523(a)(2)(A) cases where defendants continued to collect Social Security disability benefits by failing to report changes in employment despite a legal duty to do so. *Id.* at n. 4. It cited to two cases with approval, *In re Tucker*, 539 B.R. 861 (Bankr. D. Idaho 2015) and *In re Drummond*, 530 B.R. 707, 710, and n. 3 (Bankr. E.D. Ark. 2015), expressly noting *Drummond's* holding that "the requirement of the debtor to notify [the Social Security Administration] if she returns to work is not a statement that respects the debtor's financial condition." *Id*. *Lamar*, therefore, supports the positions that a statement concerning employment or underemployment is not a statement respecting the debtor's financial condition.

Defendant contends that the Social Security disability cases differ from his case because in the Social Security cases, no representation is made by the claimant. He argues the Supreme Court recognized an exception to §523(a)(2)(B), allowing the claims to be brought under §523(a)(2)(A) because otherwise the Social Security Administration could never assert a claim for dischargeability based on the failure of a claimant to notify it of employment. He contends there is no need for such an exception here, because plaintiff alleges he made a misrepresentation.

The court disagrees with defendant's effort to differentiate *Lamar*. It is true that DLLR's procedures described in the complaint for the continued receipt of benefits are the mirror image of the Social Security benefits procedures described in *Tucker* and *Drummond*. Under DLLR's

procedures, the claimant will only continue to receive benefits if the claimant makes the representation through Telecert or Webcert that he or she remains unemployed or underemployed. In the Social Security context, the claimant continues to receive benefits until he or she notifies the Social Security Administration of employment. *Tucker*, 539 B.R. at 862-863.

This distinction is relevant in considering whether there has been a misrepresentation in the first place. In the Social Security cases, no affirmative misrepresentation can be alleged because the claimant continues to receive a benefit without saying anything. The courts nevertheless conclude that, because the claimant is under a duty to speak, the failure to report employment is an implied misrepresentation made by the claimant that he or she remains unemployed, and the implied misrepresentation is actionable under §523(a)(2)(A). *See*, *e.g.*, *Tucker*, 539 BR at 866-868.

The distinction is not pertinent to the case before the court. Plaintiff alleges that, under the DLLR procedure, defendant signed on to Telecert and Webcert and stated through that format that he was not employed, when he was employed. Plaintiff therefore alleges defendant made an affirmative misrepresentation, and there is no need to consider whether an implied misrepresentation is alleged. What is pertinent here is that, in the Social Security cases, once the court determined that the claimant made an implied misrepresentation that she was unemployed, the courts determined that the implied misrepresentation was not one respecting the debtor's financial condition. It is that determination that the Supreme Court gave as an example of an appropriate claim under §523(a)(2)(A). Accordingly, *Lamar* supports the conclusion that a misrepresentation concerning employment status is not one respecting a debtor's financial condition and can provide the basis for a claim under §523(a)(2)(A).

9

The parties next disagree whether the alleged misrepresentation by defendant is oral or written, since he is alleged to have entered data through the Telecert and Webcert functions which produce no actual writings and have no voice functions. Technically speaking, the distinction drawn in §§523(a)(2)(A) and (B) is not between oral and written statements, but between statements other than those respecting a debtor's financial condition, §523(a)(2)(A), and written statements respecting a debtor's financial condition, §523(a)(2)(B). Under §523(a)(2)(A), oral statements often provide a basis for a discharge exception, but so can implied statements, as discussed above, or even conduct. Because the court has determined, based on *Lamar*, that statements concerning employment status are not statements respecting the debtor's financial condition, the court need not resolve the issue.

Finally, the court turns to the statute of limitations question. As stated above, the complaint does not seek a money judgment, but only a declaration that any amounts owed by defendant to plaintiff are excepted from discharge under §523(a)(2)(A). Defendant does not contend that the determination of whether a debt is excepted from discharge is subject to a statute of limitations. Thus, the claim as presented in the complaint is not barred by limitations.

At the hearing on the motion to dismiss, plaintiff stated it intends to amend the complaint to add a request for a money judgment on its claim. Defendant argues that a claim for a money judgment would be barred by Maryland's three-year limitations period in Md. Code Ann., Cts. & Jud. Proc. §5-101. Plaintiff argues the claim is not barred because limitations do not run against the State. The court declines to resolve a dispute over whether the statute of limitations bars a claim that is not asserted in the complaint.

## Conclusion

For the foregoing reasons, the court will deny the motion to dismiss by separate order.

10

cc: Plaintiff
Plaintiff's Counsel
Defendant
Defendant's Counsel
Trustee
U.S. Trustee

**END OF MEMORANDUM OF DECISION**