IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JOSEPH THOMAS JOHNSON, JR.,

    *Plaintiff*,

v.

STATE OF MARYLAND CENTRAL
COLLECTIONS UNIT,

    *Defendant*.

Civil Action No. ELH-19-2821

**MEMORANDUM OPINION**

This matter is rooted in a Chapter 7 bankruptcy proceeding filed in the District of Maryland by debtors Joseph Thomas Johnson, Jr. ("Johnson") and Heather Rebecca Johnson. *See* TJC-19-13235 (D. Md.). In connection with the bankruptcy proceeding, the State of Maryland Central Collection Unit (the "State" or "CCU") initiated an adversary proceeding against Johnson (ECF 4-1), contesting the dischargeability of debt under 11 U.S.C. § 523(a)(2). *See* Adv. Pro. 19-00183. Pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Bankr. P. 7056, Johnson moved to dismiss the adversary proceeding. *See* ECF 1 at 2, ¶ 2.[1] The Bankruptcy Court (Catliota, J.) denied the motion.

Thereafter, in this Court, Johnson filed "Debtor's Motion To Appeal Interlocutory Order," pursuant to 28 U.S.C. § 158(a)(2) and Fed. R. Bankr. P. 8001(b) and 8003. ECF 1 ("Motion"). The Motion is supported by several exhibits. ECF 1-1 to ECF 1-4. The State opposes the Motion. ECF 2. The record was transmitted to this Court and is docketed at ECF 4.[2]

---

[1] Rule 7056 is titled "Summary Judgment" and has no relevance here. Presumably, the debtor meant to cite Rule 7012(b).

[2] The record does not contain the underlying motion to dismiss, nor did the parties provide the Court with a copy of it. However, the Court may take judicial notice of the filing of

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall deny the Motion.

## I.  Factual and Procedural Background[3]

The Johnsons filed a petition for relief under Chapter 7 of the United States Bankruptcy Code on March 12, 2019. ECF 4-1, ¶ 2. The State filed the adversary proceeding against Johnson on June 6, 2019. *See* ECF 4-1 at 5. The State's adversary action is captioned "Complaint To Determine Dischargeability of Debt." ECF 4-1 at 1. CCU submitted several exhibits with its suit. *See* ECF 4-2 to ECF 4-7.

In the adversary proceeding (ECF 4-1), CCU (denominated as plaintiff) alleged that Johnson (denominated as defendant) filed claims in 2004 with the Maryland Department of Labor, Licensing, and Regulation ("DLLR"), resulting in unemployment benefits paid to Johnson to which he was not entitled. *Id.* ¶¶ 9-13. According to the State, the DLLR had notified Johnson of the eligibility requirements for unemployment benefits. *Id.* ¶ 9. The State contends that while Johnson was receiving unemployment benefits, he "made express representations to DLLR that [he] remained unemployed or underemployed and was eligible and entitled to receive the unemployment benefit payments for each week DLLR paid the benefits." *Id.* ¶ 10. However, according to the State, between January 24, 2004 and April 17, 2004, Johnson knowingly and falsely certified that he remained unemployed or underemployed, collecting $2,728.00 in benefits, yet he was actually earning wages at that time. *Id.* ¶¶ 11-13.

---

the Motion and its content. *See* Fed. R. Civ. P. 201; *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015) ("A court may take judicial notice of docket entries, pleadings, and papers in other cases…."), *aff'd*, 639 F. App'x 200 (4th Cir. 2016).

[3] The factual summary is derived from the Motion and exhibits attached thereto (ECF 1), as well as the record on appeal transmitted to this Court. ECF 4.

2

The State alleges that Johnson's conduct violated, *inter alia*, Md. Code, § 8-1001 of the Labor and Employment Article ("L.E."). *Id.* ¶ 13. And, the Secretary of the DLLR determined that Johnson "was not entitled to the unemployment benefits and that the benefits were paid as a result of [his] fraudulent conduct. . . ." *Id.* ¶ 14. Further, the State alleged that Johnson was "advised of his right to participate in a fact finding investigation" and "was given notice of the determination and his appeal rights." *Id.* According to the State, Johnson did not appeal the Secretary's determination. *Id.* ¶ 15.

The State maintains that if the Secretary of DLLR "determines subsequent to the claim filing that a claimant was not entitled to all or a portion of the benefits received, DLLR may recover the overpaid benefits," pursuant to L.E. § 8-809. *Id.* ¶ 7. The State also posits that if the Secretary determines that the "claimant knowingly made a false statement or misrepresentation, or knowingly failed to disclose a material fact to obtain or increase a benefit," DLLR may also recover "interest of 1.5% per month" on the outstanding amount of benefits. *Id.*

DLLR averred that it referred the debt to CCU for collection on March 8, 2005. *Id.* ¶ 16. Because of this referral, a "statutory 17% collection fee was assessed" on the debt, *id.* ¶ 16, pursuant to Md. Code, State Finance and Procurement Article, § 3-304. *Id.* ¶ 8. As a result, CCU claimed that, as of March 12, 2019, Johnson owed the State the sum of $10,300.69. *Id.* ¶ 16. Moreover, according to the State, the debt owed by Johnson is not dischargeable under 11 U.S.C. § 523(a)(2)(A). *Id.* ¶ 17. This is because Johnson "received the money from DLLR by false pretenses, false representations, or actual fraud. . . ." *Id.*[4]

---

[4] In relevant part, 11 U.S.C § 523(a) states:

**(a)** A discharge under section 727, 1141, 1192, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

As noted, Johnson moved to dismiss the adversary proceeding, pursuant to Rule 12(b)(6). ECF 1, ¶ 2. He advanced two grounds. First, he claimed that "the statute of limitations precluded" the State's adversary proceeding. Second, he argued that the State's "allegations fail to meet the writing requirement of 11 U.S.C § 523(a)(2)(B)." *Id.*

The Bankruptcy Court held a hearing on the Motion on August 7, 2019. ECF 1-4 at 4. In a well reasoned Memorandum Decision (ECF 1-3) and Order (ECF 1-2) of August 30, 2019, Judge Caliota denied Johnson's Motion. *Id.*

According to the Bankruptcy Court, in the motion to dismiss, Johnson contended, *inter alia*, that representations with respect to unemployment constitute statements concerning financial condition. ECF 1-3 at 7. Therefore, under 11 U.S.C. § 523(a)(2)(A), the "alleged misrepresentations. . . must be in writing" in order to make them nondischargeable under 11 U.S.C. § 523(a)(2)(B). *Id.* at 8.

The Bankruptcy Court observed that "if all other elements are met, a materially false 'statement respecting the debtor's. . . financial condition' must be in writing to be excepted from discharge." *Id.* at 7. The court also noted that, under § 523(a)(2)(A), oral statements and implied

* * * * *

> **(2)** for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--
>> **(A)** false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>> **(B)** use of a statement in writing--
>>> **(i)** that is materially false;
>>> **(ii)** respecting the debtor's or an insider's financial condition;
>>> **(iii)** on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>>> **(iv)** that the debtor caused to be made or published with intent to deceive. . . .

statements "often provide a basis for a discharge exception…." *Id.* at 10. It explained that the significant distinction is not whether statements are oral or written. Rather, it is whether the statement is one that pertains to a debtor's financial condition. *Id.* And, it noted that "[m]isrepresentations that are not respecting the debtor's financial condition are excepted under § 523(a)(2)(A)." *Id.* at 7.

Further, Judge Catliota determined that the State had adequately alleged that Johnson "made an affirmative misrepresentation." *Id.* at 9. According to the bankruptcy court, the alleged misrepresentation "is not one respecting a debtor's financial condition" and therefore it "can provide the basis for a claim under [11 U.S.C.] § 523(a)(2)(A)." *Id.*

The Bankruptcy Court also noted that Johnson argued "that a claim for money judgment would be barred by Maryland's three-year limitations period in Md. Code Ann., Cts. & Jud. Proc. § 5-101." *Id.* at 10. But, the court pointed out that the State did "not seek a money judgment, but only a declaration that any amounts owed by [Johnson] to [the State] are excepted from discharge under [11 U.S.C.] § 523(a)(2)(A)." *Id.* Therefore, the Bankruptcy Court "declin[ed] to resolve a dispute over whether the statute of limitations bars a claim that is not asserted in the complaint." *Id.*

Additional facts are included, *infra*.

## II. Discussion

### A.

Johnson seeks leave to appeal the denial of the Motion under 28 U.S.C. § 158(a)(2) and Bankruptcy Rules 8001(b) and 8003. ECF 1 at 1. The jurisdiction of a district court to hear an appeal from a bankruptcy court is conferred by 28 U.S.C. § 158(a), which provides, in relevant part:

5

> (a) The district courts of the United States shall have jurisdiction to hear appeals
>   (1) from final judgments, orders, and decrees;
>   (2) from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title; and
>   (3) with leave of the court, from other interlocutory orders and decrees[.]

Thus, "by statute, an appeal of right exists… from a final judgment…." *In re Rood*, 426 B.R. 538, 546 (D. Md. 2010) (Chasanow, J.). Or, under § 158(a)(2), an interlocutory appeal may be filed as to a decree issued under Section 1121(d). Otherwise, under § 158(a)(3), an appeal from an interlocutory order "may lie only upon obtaining leave of the court." *In re Rood*, 426 B.R. at 546.

In ECF 1, Johnson moved for leave to appeal under 28 U.S.C. § 158(a)(2). That provision is inapposite here, because the proposed appeal does not concern a decision of the Bankruptcy Court involving 11 U.S.C. § 1121(d), as required by 28 U.S.C § 158(a)(2). Further, as discussed below, the Bankruptcy Court's denial of the Motion is not a final judgment under 11 U.S.C. § 158(a)(1). As a result, Section 158(a)(1) affords no ground for appeal at this time. Johnson's Motion should have been filed under 28 U.S.C. § 158(a)(3). *See In re Minh Vu Hoang,* 2011 WL 6296839, at *1; *In re Rood,* 2010 WL 4923336, at *4. And, because the order denying the motion to dismiss is interlocutory, Mr. Johnson may appeal only upon obtaining leave of the court. *See* 28 U.S.C. § 158(a)(3); *see also In re Rood,* DKC-10-2651, 2010 WL 4923336, at *2 (D. Md. Nov. 29, 2010).

"As a general rule, a final judgment under 28 U.S.C. § 1291 is 'one which ends the litigation . . . and leaves nothing for the court to do but execute the judgment.'" *In re Hebb,* 53 B.R. 1003, 1005 (D. Md. 1985) (quoting *Catlin v. United States,* 324 U.S. 229, 233 (1945)); *see In re Rood*, 426 B.R. at 546. By contrast, an interlocutory order is "one which does not finally determine a cause of action but only decides some intervening matter pertaining to the cause, and

which requires further steps to be taken to enable the court to adjudicate the cause on the merits." *In re Hebb,* 53 B.R. at 1005. *See* BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "interlocutory" as "interim or temporary; not constituting a final resolution of the whole controversy").

To be sure, the concept of a final judgment in a bankruptcy proceeding is more forgiving than the standard applied in civil proceedings under 28 U.S.C. § 1291. In *Bullard v. Blue Hills Bank*, 575 U.S. 496, 135 S. Ct. 1686, 1692 (2015), the Supreme Court said: "A bankruptcy case involves 'an aggregation of individual controversies,' many of which would exist as stand-alone lawsuits but for the bankrupt status of the debtor. . . Accordingly, 'Congress has long provided that orders in bankruptcy cases may be immediately appealed if they finally dispose of discrete disputes within the larger case.'" (Citations omitted); *see Mort Ranta v. Gorman*, 721 F.3d 241, 246 (4th Cir. 2013) ("[T]he concept of finality in bankruptcy traditionally has been applied in a 'more pragmatic and less technical way' than in other situations.") (quoting *McDow v. Dudley,* 662 F.3d 284, 287 (4th Cir. 2011)); *In re Computer Learning Centers, Inc.,* 407 F.3d 656, 660 (4th Cir. 2005) (stating that orders in bankruptcy cases "'may be immediately appealed if they finally dispose of discrete disputes within the larger case'") (quoting *In re Saco Local Dev. Corp.,* 711 F.2d 441, 444 (1st Cir. 1983)); *A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 1009 (4th Cir. 1986) (stating that in the bankruptcy context, the concept of finality "has traditionally been applied 'in a more pragmatic and less technical way . . . than in other situations'") (quoting *In re Amatex Corp.,* 755 F.2d 1034, 1039 (3d Cir. 1985)).

Judge Chasanow explained in *In re Rood*, 426 B.R. at 546-47 (quoting *In re Swyter*, 263 B.R. 742, 746 (E.D. Va. 2001)):

7

> [C]onsiderations unique to bankruptcy appeals, such as the protracted nature of the proceedings and the large number of interested parties, require a less rigorous application of the finality rule. *See* [*In re Saco,* 711 F.2d] at 443-48. Put differently, "[t]o avoid the waste of time and resources that might result from reviewing discrete portions of the action only after a plan of reorganization is approved, courts have permitted appellate review of orders that in other contexts might be considered interlocutory." *Dalkon Shield*, 828 F.2d at 241 (quoting *In re Amatex Corp.,* 755 F.2d at 1039; *see also In re Mason,* 709 F.2d 1313, 1316 (9th Cir. 1983) (holding that finality must be determined "in light of the unique nature of bankruptcy procedure and not with blind adherence to the rules of finality"). Thus, for example, the decision to appoint a trustee or an examiner is a final appealable order because to hold otherwise would delay review of the decision until "a final plan is approved" and "may well cause several years of hearings and negotiations to be wasted." *In re Amatex,* 755 F.2d at 1040 (cited with approval in *Dalkon Shield*, 828 F.2d at 241). Furthermore, the decision to set aside the sale of a bankruptcy asset and to reopen proceedings is also final and appealable because it "finally determines" a creditor's position vis-a-vis the debtor and places any resale of assets in considerable doubt. *In re Irvin,* 950 F.2d 1318, 1319 (7th Cir. 1991); *see In re Gould,* 977 F.2d 1038, 1041 (7th Cir. 1992). In sum, these cases stand for the proposition that an order is final and appealable if it (i) finally determines or seriously affects a party's substantive rights, or (ii) will cause irreparable harm to the losing party or waste judicial resources if the appeal is deferred until the conclusion of the bankruptcy case. *See In re Mason,* 709 F.2d at 1316 (citing R. LEVIN, BANKRUPTCY APPEALS, 59 N.C. L. Rev. 967, 985-86 & n.140).

Here, the Bankruptcy Court's denial of Johnson's Motion cannot be considered a final judgment. The denial of the Motion did not finally determine the substantive claims, nor did it "finally dispose of discrete disputes within the larger case." *In re Saco Local Dev. Corp.,* 711 F.2d at 444. To the contrary, the bankruptcy judge determined that, under the traditional analysis of a motion to dismiss under Rule 12(b)(6), CCU stated a claim upon which relief could be granted. As a result, the denial of the Motion merely permits the State to continue with its adversary proceeding.

I turn to consider whether leave to appeal is warranted.

8

**B.**

In *HeiTech Services, Inc. v. Rowe*, GJH-17-1319, 2017 WL 4838750, at *2 (D. Md. Oct. 24, 2017) (citations omitted), Judge Hazel of this Court explained the applicable standard:

> When deciding whether to grant leave to appeal an interlocutory order or decree of a bankruptcy court, the district court may employ an analysis similar to that applied when certifying interlocutory review by the circuit court of appeals under 28 U.S.C. § 1292(b). Under this analysis, leave to file an interlocutory appeal should be granted only when 1) the order involves a controlling question of law, 2) as to which there is substantial ground for a difference of opinion, and 3) immediate appeal would materially advance the termination of the litigation.

(Quoting *In re Pawlak*, 520 B.R. 177, 182 (D. Md. 2014)); *see KPMG Peat Marwick, LLP v. Estate of Nelco, Ltd., Inc.*, 250 B.R. 74, 78 (E.D. Va. 2000). All three elements must be met for leave to be granted. *See In re Air Cargo, Inc.*, CCB-080587, 2008 WL 2415039, at *3 (D. Md. June 11, 2008); *KPMG Peat Marwick*, 250 B.R. at 79; *see also Coalition for Equity and Excellence in Maryland Higher Educ. v. Maryland Higher Educ. Comm'n*, CCB-06-2773, 2015 WL 4040425, at *6 (D. Md. June 29, 2015).

A district court will not hear an interlocutory appeal when parties merely "'disagree as to a Bankruptcy Court's interlocutory order, but rather only where substantial ground for disagreement exists as to the controlling issues of law that informed the order.'" *In re Pawlak*, 520 B.R. at 184 (quoting *In re Air Cargo, Inc.*, 2008 WL 2415039, at *3); *see KPMG Peat Marwick*, 250 B.R. at 79. "An issue presents a substantial ground for difference of opinion if courts, as opposed to parties, disagree on a controlling legal issue." *Lynn v. Monarch Recovery Mgmt., Inc.*, 953 F. Supp. 2d 612, 624 (D. Md. 2013).

In the motion to dismiss filed in the Bankruptcy Court, Johnson raised two issues. In his Motion here, he focuses largely on the second of those issues, concerning the statute of limitations. See ECF 1 at 2-3. However, the Bankruptcy Court explicitly declined to resolve the limitations argument. And, under Rule 12(b)(6), courts ordinarily do not resolve affirmative

9

defenses, such as the statute of limitations. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc). Therefore, I will focus on Johnson's contention concerning dischargeability of the debt under 11 U.S.C. § 532(a)(2)(A). ECF 1 at 3.

### 1. Controlling Question of Law

As indicated, the district court should grant leave for an interlocutory appeal when, among other things, the order in issue involves a controlling question of law. Notably, "[a]n order involves a controlling question of law when reversal of the bankruptcy court's order would be dispositive of the case as either a legal or practical matter and determination of the issue on appeal will materially affect the outcome." *In re Minh Vu Hoang,* 2011 WL 6296839, at *2; *accord In re Rood,* 2010 WL 4923336, at *4; *In re Pawlak,* 520 B.R. at 183; *See also KPMG Peat Marwick*, 250 B.R. at 78 (stating that a controlling question of law is "a narrow question of pure law whose resolution will be completely dispositive of the litigation, either as a legal or practical matter, whichever way it goes.") (citing *Fannin v. CSX Transp. Inc*, 873 F.2d. 1438 (table), 1989 WL 42583, at *5 (4th Cir. 1989)). "Factual determinations and appeals presenting a question of law and fact are not appropriate for interlocutory review." *In re Pawlak,* 520 B.R. at 183 (quoting *In re ASC, Inc.,* 386 B.R. 187, 196 (E.D. Mich. 2008)).

The State claimed Johnson made an affirmative representation of eligibility for unemployment benefits. The Bankruptcy Court correctly accepted the truth of CCU's allegations, solely for purposes of the Rule 12(b)(6) motion filed by Johnson. *See* ECF 1-3 at 2. The Bankruptcy Court also analyzed the Supreme Court's discussion in *Lamar, Archer & Cofrin, LLP v. Appling*, __U.S.__, 138 S. Ct. 1752 (2018) with respect to the phrase "statement respecting the debtor's financial condition." The Bankruptcy Court stated, ECF 1-3 at 7-8:

10

To state a misrepresentation claim under §523(a)(2)(A), a plaintiff must assert four elements: (1) a fraudulent misrepresentation; (2) that induces another to act or refrain from acting; (3) causing harm to the plaintiff; and (4) the plaintiff's justifiable reliance on the misrepresentation. [*In re*] *Biondo*, 180 F.3d [126], 134 [(4th Cir. 1999)]; *Miller v. Cigna Ins. Co.*, 311 B.R. 57, 61 (D. Md. 2004). In order to satisfy §523(a)(2)(B), a plaintiff must prove the debtor: (1) used a statement in writing respecting the debtor's or an insider's financial condition; (2) that was materially false; (3) that the creditor reasonably relied upon; and (4) that the debtor made with intent to deceive. *Guaranty Residential Lending, Inc. v. Koep*, 334 B.R. 364, 372-373 (Bankr. D. Md. 2005) (citing *Ins. Co. of N. Am. v. Cohn*, 54 F.3d 1108, 1114 (3d Cir. 1995)).

As is apparent from the statutory framework, if all other elements are met, a materially false "statement respecting the debtor's . . . financial condition" must be in writing to be excepted from discharge. §523(a)(2)(B). Misrepresentations that are not respecting the debtor's financial condition are excepted under §523(a)(2)(A).

The Supreme Court addressed the meaning of the phrase "statement respecting the debtor's financial condition" in *Lamar, Archer & Cofrin, LLP v. Appling*, --- U.S. ---, 138 S.Ct. 1752, 201 L.Ed.2d 102 (2018). The Court held that a statement about a single asset can be a statement respecting the debtor's financial condition within the meaning of §523(a)(2). *Lamar*, 138 S.Ct. at 1758. More pertinent here, the Court interpreted §523(a)(2)(B) broadly and held that a statement is "respecting" a debtor's financial condition "if it has a direct relation to or impact on the debtor's overall financial status." *Id.* at 1761.

Relying on *Lamar*, defendant contends the alleged misrepresentations in the complaint concern his employment status and have a direct relation to or impact on his overall financial status. He argues, therefore, the alleged misrepresentations are statements respecting his financial condition and must be in writing to provide an exception from discharge.

The petitioner in *Lamar* argued that a broad reading of the phrase "statement respecting the debtor's financial condition" would give §523(a)(2)(B) "an implausibly broad reach, such that little would be covered" by §523(a)(2)(A). *Id.* at 1763. The Court disagreed. It gave as examples of viable claims under §523(a)(2)(A) cases where defendants continued to collect Social Security disability benefits by failing to report changes in employment despite a legal duty to do so. *Id.* at n. 4. It cited to two cases with approval, *In re Tucker*, 539 B.R. 861 (Bankr. D. Idaho 2015) and *In re Drummond*, 530 B.R. 707, 710, and n. 3 (Bankr. E.D. Ark. 2015), expressly noting Drummond's holding that "the requirement of the debtor to notify [the Social Security Administration] if she returns to work is not a statement that respects the debtor's financial condition." *Id. Lamar*, therefore, supports the positions that a statement concerning employment or underemployment is not a statement respecting the debtor's financial condition.

11

The Bankruptcy Court then addressed Johnson's efforts to distinguish *Lamar*'s discussion of social security benefits from unemployment benefits, finding the argument unpersuasive. It reasoned, *id.* at 8-9:

> Defendant contends that the Social Security disability cases differ from his case because in the Social Security cases, no representation is made by the claimant. He argues the Supreme Court recognized an exception to §523(a)(2)(B), allowing the claims to be brought under §523(a)(2)(A) because otherwise the Social Security Administration could never assert a claim for dischargeability based on the failure of a claimant to notify it of employment. He contends there is no need for such an exception here, because plaintiff alleges he made a misrepresentation.
>
> The court disagrees with defendant's effort to differentiate *Lamar*. It is true that DLLR's procedures described in the complaint for the continued receipt of benefits are the mirror image of the Social Security benefits procedures described in *Tucker* and *Drummond*. Under DLLR's procedures, the claimant will only continue to receive benefits if the claimant makes the representation through Telecert or Webcert that he or she remains unemployed or underemployed. In the Social Security context, the claimant continues to receive benefits until he or she notifies the Social Security Administration of employment. *Tucker*, 539 B.R. at 862- 863.
>
> This distinction is relevant in considering whether there has been a misrepresentation in the first place. In the Social Security cases, no affirmative misrepresentation can be alleged because the claimant continues to receive a benefit without saying anything. The courts nevertheless conclude that, because the claimant is under a duty to speak, the failure to report employment is an implied misrepresentation made by the claimant that he or she remains unemployed, and the implied misrepresentation is actionable under §523(a)(2)(A). *See, e.g., Tucker*, 539 BR at 866-868.
>
> The distinction is not pertinent to the case before the court. Plaintiff alleges that, under the DLLR procedure, defendant signed on to Telecert and Webcert and stated through that format that he was not employed, when he was employed. Plaintiff therefore alleges defendant made an affirmative misrepresentation, and there is no need to consider whether an implied misrepresentation is alleged. What is pertinent here is that, in the Social Security cases, once the court determined that the claimant made an implied misrepresentation that she was unemployed, the courts determined that the implied misrepresentation was not one respecting the debtor's financial condition. It is that determination that the Supreme Court gave as an example of an appropriate claim under §523(a)(2)(A). Accordingly, *Lamar* supports the

conclusion that a misrepresentation concerning employment status is not one respecting a debtor's financial condition and can provide the basis for a claim under §523(a)(2)(A).

Judge Catliota concluded that the State adequately pleaded that Johnson alleged an affirmative misrepresentation. Because the Bankruptcy Court determined that "statements concerning employment status are not statements respecting the debtor's financial condition," it concluded that it need not resolve whether the statement under § 523(a) must be in writing. *Id.* at 10.

The conclusion that claims for unemployment benefits are not statements concerning financial condition is a controlling question of law. If Judge Catliota erred as a matter of law in his legal conclusion, then it would follow that the CCU did not state a claim.

### 2. Difference of Opinion as to the Controlling Question of Law

As outlined, an interlocutory appeal is not warranted unless, *inter alia*, there is substantial ground for a difference of opinion as to a controlling question of law. However, this criterion is not satisfied when parties merely "disagree as to a Bankruptcy Court's interlocutory order," but there is no "substantial ground for disagreement . . . as to the controlling issues of law that informed the order." *In re Air Cargo, Inc.*, 2008 WL 2415039, at *3; *see also In re Pawlak,* 520 B.R. at 184.

Of relevance here, "an interlocutory appeal will lie only if a difference of opinion exists *between courts* on a given controlling question of law, creating the need for an interlocutory appeal to resolve the split or clarify the law." *KPMG Peat Marwick*, 250 B.R. at 83 (emphasis in original). The burden is on the movant to demonstrate that such substantial disagreement exists. *See Lynn*, 953 F. Supp. 2d at 626 ("What matters is whether the movant has shown a substantial ground for differences of opinion among the *courts*.")

13

Johnson argues that the Bankruptcy Court's analysis involves "questions of law to which there appears to be no controlling decisions of either the U.S. Supreme Court or the Fourth Circuit Court of Appeals." ECF 1, ¶ 21. Further, he contends that "no federal circuit court of appeals has issued an opinion regarding the questions presented here." *Id.* ¶ 22. And, he argues that the "questions presented are pervasive and recurring within the District." *Id.* ¶ 24.

The State counters that Johnson has failed "to offer any evidence of disagreement between courts as to §523(a)(2)(A)'s applicability to a debtor's statements concerning employment status and, thus, [he] fails to meet its [sic] burden of proof." ECF 2, ¶ 9. The State adds that Johnson "seems to tacitly acknowledge a lack of any judicial disagreement. . . ." *Id.*

To support his position, Johnson has not cited to even a single case that comes to a conclusion at odds with the ruling of Judge Catliota, who determined that a claim for unemployment benefits is not a statement concerning the debtor's financial condition. Indeed, Mr. Johnson suggests that the issue is one of first impression. But, an issue of first impression is insufficient to create the substantial disagreement required under this analysis. "'[T]he mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion.'" *Lynn*, 953 F. Supp. 2d at 624 (quoting *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996)).

However, "when a matter of first impression also ha[s] other grounds for difference of opinion—and met the other two criteria—district courts in this circuit have certified the issue for interlocutory appeal." *Kennedy v. Villa St. Catherine, Inc.*, PWG-09-3021, 2010 WL 9009364, at *2 (D. Md. June 16, 2010).[5] But, as Judge Bennett of this Court has explained, the *Kennedy* Court concluded that there was "substantial ground for difference of opinion … specifically

---

[5] At the time *Kennedy* was decided, Judge Grimm was a Magistrate Judge. He now serves as a District Judge.

14

because the issue before the Court '[was] a matter of fundamental rights.'" *Goodman v. Archbishop Curley High School, Inc.*, 195 F. Supp. 3d 767, 774 (D. Md. 2016) (citing *Kennedy*, 2010 WL 9009364 at *3).  In contrast, this case does not present such a situation.

In *Lamar*, the Supreme Court cited *In re Tucker*, 539 B.R. 861 and *In re Drummond*, 530 B.R. 707, for the proposition that a debt is nondischargeable under § 523(a)(2) when an individual has received an overpayment of social security benefits as a result of failing to report changes in employment.  *Lamar*, 138 S. Ct. at 1763 n.4.  The requirement of a debtor to report changes in employment to the Social Security Administration "'is not a statement that respects the debtor's financial condition.'" *Id.* (citing *In re Drummond*, 530 B.R. at 710, n.3).  The Bankruptcy Court analogized this reasoning to unemployment benefits,

In my view, Johnson has not met his burden on this prong of the analysis.  Therefore, I need not consider the third criterion: whether an immediate appeal would materially advance the termination of the litigation or otherwise simplify the trial.  *Coalition for Equity and Excellence*, 2015 WL 4040425, at *6.

### III.   Conclusion

For the aforementioned reasons, I shall deny the Motion (ECF 1).  An Order follows.

Date: May 8, 2020                                    /s/
                                                     Ellen L. Hollander
                                                     United States District Judge